WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **LAURA BETTIN,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIV 04-02980 PHX MEA** |
| | ) |
| **MARICOPA COUNTY, MARICOPA** | )   **MEMORANDUM AND ORDER** |
| **COUNTY SHERIFF'S OFFICE,** | ) |
| **JOE ARPAIO, FRED HAYMAN,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

All of the parties have consented to the exercise of magistrate judge jurisdiction over this case, including the entry of final judgment. Before the Court is Defendant's motion for summary judgment (Docket No. 31) and Plaintiff's cross-motion for summary judgment (Docket No. 39).

**I Procedural Background**

On November 3, 2004, Plaintiff, who is now *pro se*, filed a complaint in the Maricopa County Superior Court alleging violations of state law and her federal constitutional rights. Docket No. 1. Plaintiff's claims arise from events occurring on February 6, 2003, involving Plaintiff's detention and the execution of a search warrant obtained by Defendant Hayman at Plaintiff's Phoenix home by a Maricopa County Sheriffs Office

("MCSO") SWAT team and other MCSO personnel, including Defendant Hayman, a MCSO detective.    The complaint also involves Plaintiff's arrest and detention by Defendant Hayman on March 4, 2003, on a charge of possession of methamphetamine.    Plaintiff alleges Defendant Hayman falsely arrested her and harassed her, and that Defendants are improperly holding Plaintiff's personal property, seized during the execution of the search warrant.    In addition to alleging liability pursuant to 42 U.S.C. § 1983 for violation of her Fifth Amendment "right to counsel," her Fourth Amendment right to be free from unreasonable searches and seizures, and her right to due process of law, Plaintiff's initial complaint stated claims for false arrest and imprisonment, intentional infliction of emotional distress, conspiracy, outrageous conduct, libel and slander, negligence, and state constitutional violations.    The complaint seeks injunctive relief, and compensatory and punitive damages.

Plaintiff contends municipal liability of Defendants Maricopa County and the Maricopa County Sheriff's Office is predicated on these Defendants' unconstitutional policies and practices.    Plaintiff contends the policy and practice of executing search warrants by means of a SWAT team, when there "was no evidence that this type of entry was needed" violated her constitutional rights.    Docket No. 39 at 5.    Plaintiff further alleges Defendant Maricopa County is liable for failing to adequately train its officers, constituting deliberate indifference to Plaintiff's constitutional rights.    Id. at 6. Plaintiff alleges Defendant Arpaio's liability is predicated on his own culpable action for failing to adequately train and

supervise his subordinates and his conduct showing deliberate indifference to her constitutional rights.  Id. at 7.

The case was removed to federal court on December 23, 2004.  On October 27, 2005, Defendants filed a motion for judgment on the pleadings.  Docket No. 14.  On October 28, 2005, all of the parties acquiesced to the exercise of magistrate judge jurisdiction over this matter and the case was reassigned. Docket No. 15.  On April 18, 2006, the Court granted Defendants' motion for judgment on the pleadings with regard to Plaintiff's state law-based claims, but allowed Plaintiff to proceed on her federal civil rights claims, brought pursuant to 42 U.S.C. §1983.  See Docket No. 24.  Plaintiff's counsel was allowed to withdraw from representation on August 11, 2006.  See Docket No. 26.

On December 15, 2006, Defendants filed a motion for summary judgment and a separate statement of facts in support of the motion for summary judgment.  See Docket No. 31 & Docket No. 32.  Defendants assert judgment as a matter of law is appropriate because there are no disputed issues of material fact.  Defendants contend Plaintiff's constitutional rights were not violated, that Defendant Hayman is entitled to immunity from suit, and that Plaintiff has not established Defendant Maricopa County's municipal liability or Defendant Arpaio's liability.

On March 5, 2007, Plaintiff filed a pro se response to Defendants' motion for summary judgment and a cross-motion for summary judgment.  See Docket No. 39.  Plaintiff filed a separate statement of facts in support of her cross-motion for summary judgment.  See Docket No. 41.  Defendants filed a reply

1   to the response on March 19, 2007.   <u>See</u> Docket No. 43.

2   Defendants lodged a supplemental statement of facts in support

3   of their motion for summary judgment.   <u>See</u> Docket No. 45.[1]

4        Also pending before the Court is Defendants' objection

5   to Plaintiff's statement of facts.   <u>See</u> Docket No. 44.[2]

6        **II Standard for granting judgment as a matter of law**

7        Rule 56 of the Federal Rules of Civil Procedure

8   provides that judgment shall be entered if the pleadings,

9

10       [1] Plaintiff does not object to Defendants' motion to
11   supplement their statement of facts and, accordingly, that motion at
     Docket No. 45 will be granted.

12       [2] Defendants contend the challenged statements do not meet
13   the requirements of Rule 56, Federal Rules of Civil Procedure.
     Defendants object to, <i>inter alia</i>, Plaintiff's statement that the
14   search warrant was executed at 6 a.m. and that Defendant Hayman, while
     questioning Plaintiff, received a page from an officer still at the
15   residence informing him of the discovery of a baggie containing white
     powder in Plaintiff's purse.   Defendants also allege the document
16   cited as support for the alleged facts that: (1) Plaintiff did not
     have a criminal history; (2) was not named in the warrant; (3) was not
17   suspected of a crime; and that (4) Defendants did not have a warrant
     for Plaintiff's arrest, does not establish these facts.   Defendants
18   also object to the use of Mr. Jorgensen's affidavit, attached to
     Plaintiff's statement of facts as Exhibit D, because it is not a sworn
19   affidavit and the attachments to the affidavit are "unreliable,
     inadmissible hearsay."
20       Although both Plaintiff's and Mr. Jorgensen's affidavits are
     "sworn," neither affidavit is notarized as such.   Nonetheless, the
21   federal courts have generally concluded even unsworn and unnotarized
     affidavits may be used to contravene or support a motion for summary
22   judgment.   <u>See</u>  28 U.S.C. § 1746(2); <u>Burgess v. Moore</u>, 39 F.3d 216,
     217-18 (8th Cir. 1994); <u>Goldman, Antonetti, Ferraiuoli, Axtmayer &</u>
23   <u>Hertell v. Medfit Intern., Inc.</u>, 982 F.2d 686, 689-90 (1st Cir. 1993);
     <u>Williams v. Browman</u>, 981 F.2d 901, 904-05 (6th Cir. 1992); <u>Pfeil v.</u>
24   <u>Rogers</u>, 757 F.2d 850, 858-89 (7th Cir. 1985); <u>Hayes v. Compass Group</u>
     <u>USA, Inc.</u>, 343 F. Supp. 2d 112, 116 (D. Conn. 2004).   However, the
25   bulk of Defendants' objections are to statements of fact which are not
     material to the Court's disposition of Plaintiff's claims or facts not
26   denied by Defendants and which are supported by other admissible
     evidence in the record.   Accordingly, the Court concludes Defendants'
27   motion to strike the challenged portions of Plaintiff's statement of
     facts should be denied.   <u>See</u> <u>Amatulli v. People's Bank</u>, 917 F. Supp.
28   895, 904 (D. Conn. 1996).

depositions, affidavits, answers to interrogatories, and admissions on file show that there is no genuine dispute regarding the material facts of the case and the moving party is entitled to a judgment as a matter of law.  See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).

> For purposes of deciding a motion for summary judgment, "genuine" means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party, and "material" means that the fact is one that might affect the outcome of the suit under the governing law.

<u>United States v. One Parcel of Real Prop. with Bldgs.</u>, 960 F.2d 200, 204 (1st Cir. 1992).  See also <u>Guidroz-Brault v. Missouri Pac. R.R. Co.</u>, 254 F.3d 825, 829 (9th Cir. 2001).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings and record on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  The party opposing the motion may not rest upon the mere allegations or denials of their pleadings, but instead must produce some significant, probative evidence tending to contradict the moving party's allegations, thereby creating a genuine question of fact for resolution at trial. <u>Anderson</u>, 477 U.S. at 248, 256-57; 106 S. Ct. at 2510, 2513-14. When a party moving for summary judgment has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586, 587, 106 S. Ct. 1348, 1356 (1986).

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24, 106 S. Ct. at 2553. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). When determining if a plaintiff has met her burden of producing evidence regarding an element on which she will bear the burden of proof at trial, the Court may only consider evidence which would be admissible at trial. See, e.g., Ballen v. City of Redmond, 466 F. 3d 736, 745 (9th Cir. 2006); Orr v. Bank of Amer., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002); Burch v. Regents of Univ. of Calif., 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006), quoting Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1182 (9th Cir. 1988).

Because plaintiffs bear the burden of proof at trial, a defendant has no burden to negate a plaintiff's claims to prevail on a motion for summary judgment. See Celotex, 477 U.S. at 323, 106 S. Ct. at 2552-53. A defendant moving for summary judgment does not have the burden to produce any evidence showing the absence of a genuine issue of material fact. Id. at 325, 106 S. Ct. at 2553-54. Instead, the defendant's burden, as the party seeking summary judgment, may be discharged by showing that there is an absence of evidence to support the elements of

plaintiff's claims.  See id.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S. Ct. at 2512.  Additionally, the evidence presented in opposition to a motion for summary judgment must be probative and properly supported.  See Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982).

        The Court must consider a party's motion for summary judgment construing all alleged facts with all reasonable inferences favoring the nonmoving party.  See e.g., Genzler v. Longanbach, 410 F.3d 630, 636 (9th Cir.), cert. denied, 126 S. Ct. 749 (2005); Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1117 (9th Cir. 2001).  In considering motions and cross-motions for summary judgment, the Court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324, 106 S. Ct. at 2548; Eisenberg v. Insurance Co. of N. Am., 815 F.2d 1285, 1289 (9th Cir. 1987).  Additionally, because Plaintiff is pro se in this matter, the Court must liberally construe her pleadings.  See, e.g., Rodriquez v. Airborne Express, 265 F.3d 890, 897 (9th Cir. 2001).

        **III Statement of facts**

        Defendants and Plaintiff have filed cross-motions seeking judgment as a matter of law in their favor.  The parties have at least implied, therefore, that there are no genuine issues of material fact preventing summary judgment.  As noted supra, the Court must consider each party's motion for summary

-7-

judgment with all reasonable inferences favoring the non-moving party.  See Baldwin, 266 F.3d at 1117.  The following facts are not genuinely disputed by either party.

Defendant Hayman, a Maricopa County Sheriff's Office Detective with three years experience as a criminal investigator and as case agent in charge of a criminal investigation of Mr. Terry Jorgensen, completed an Affidavit for Search Warrant regarding a Phoenix residence located at 3250 East Yale.  See Defendant's Statement of Facts ("DSOF")(Docket No. 32) at para. 15; Plaintiff's Statement of Facts ("PSOF")(Docket No. 41), Exh. A  Defendant Hayman obtained a search warrant for this address based on his affidavit from a Justice of the Peace of the Peoria, Arizona, Justice Court on February 5, 2003.  See DSOF at para. 15.

The affidavit in support of the warrant alleged several individuals operating watercraft on and around Arizona lakes were questioned in the summer and fall of 2002 by law enforcement officials.  Id., Exh. 2.  These individuals reported they had rented watercraft from Mr. Jorgensen's business, "AA Best," at the time located at 13073 N. Cave Creek Road, in Phoenix, Arizona.  Id., Exh. 2.[3]  The officers observed some of the watercraft were not properly registered, that the operators did not have rental contracts for the watercraft, and that the hull identification numbers on some of the watercraft did not match the registration for that watercraft.  Id., Exh. 2.

---

[3]  Defendant Hayman testified in Plaintiff's criminal proceedings that AA Best ceased doing business at its location on Cave Creek Road approximately four months prior to execution of the search warrant at the East Yale residence.  See PSOF, Exh. E at 34-35.

The affidavit in support of the warrant indicated Defendant Hayman suspected Mr. Jorgensen of operating a watercraft "chop shop," i.e., that Mr. Jorgensen was dismantling watercraft and re-selling the parts, *inter alia*, via the Internet. Id., Exh. 2.   The affidavit also indicated Mr. Jorgensen was suspected of switching or altering the watercraft or hull identification numbers on various watercraft in his possession, and that he was renting watercraft for use on local lakes without the permission of the owners of the watercraft. Id., Exh. 2.

Defendant Hayman's affidavit stated a former employee of AA Best, "also stated that, while employed [by Mr. Jorgensen] he [h]as seen members of the Hell Angels visiting [Mr. Jorgensen] at AA BEST.   [The employee] has witnessed [Mr. Jorgensen] cuts methamphetamine late at night in the business....(sic)" Id., Exh. 2. Another individual, a customer of AA Best, acting with the knowledge of law enforcement, contacted Mr. Jorgensen at his residence, which was also Plaintiff's residence.    The individual reported to law enforcement that Mr. Jorgensen had suggested switching a hull identification number on a watercraft, and that Plaintiff stated: "'Are you moving those numbers around again you [k]now that's against the law'.(sic)" Id., Exh. 2 at 16.

As part of the investigation of Mr. Jorgensen, the Maricopa County Sheriff's Office conducted surveillance by helicopter on the residence on January 28, 2003. Id., Exh. 2. Officers observed several personal watercraft in various stages of being dismantled, several boat trailers, two boats, an ATV,

and a car that appeared to be partially dismantled, in the backyard at that address.  <u>Id.</u>, Exh. 2.

The search warrant stated Mr. Jorgensen's residence as 3250 East Yale Street in Phoenix, Arizona.  <u>Id.</u>, Exh. 2.  The search warrant did not indicate if any other individuals resided at 3250 East Yale Street, although the affidavit acknowledged Plaintiff lived at that address.  <u>Id.</u>, Exh. 2.  Defendant Hayman later testified in state court in criminal proceedings against Plaintiff that he was not certain at that time who the legal owner of the residence was because the residence was part of a bankruptcy action pending at the time the warrant was executed. PSOF, Exh. E.

The warrant specified a search for, among other items, computers and digital information storage devices, financial records, telephone answering devices, diaries, "[a]ny items of personal property belonging to the victims or victims not yet identified," watercraft and watercraft parts, vehicles and vehicle parts, tools, equipment, and photographs.  DSOF, Exh. 2. The warrant did not seek permission for the police to search for methamphetamine or other illegal drugs.  See <u>id.</u>, Exh. 2.  The only crimes suspected were removal of watercraft hull identification numbers, unlawful use of a means of transportation, conducting a chop shop, and fraudulent schemes. <u>Id.</u>, Exh. 2.  The warrant and affidavit did not indicate suspicion of any criminal activity by any other party living at that address.  See <u>id.</u>, Exh. 2.

The Maricopa County Sheriff's Office Tactical Operations Unit assisted in serving the search warrant on the

residence at 3250 East Yale in Phoenix, Arizona, on February 6, 2003, at approximately 6:31 a.m.  PSOF, Exhs. C, E, P. Defendant Hayman, as chief case agent, briefed the team executing the search warrant prior to their entry into the house.  Id., Exh. M at 22-23.  The officers used a battering ram on the front door of the house after they allegedly knocked and announced their presence twice.  Id., Exhs. M, P.  Defendant Hayman has stated he "did not arrive at the residence until after entry had been made, the residence was secured, and the occupants had been removed."  DSOF, Exh. 1.  On that date, Plaintiff, Mr. Jorgensen, and a third party were living at the address specified in the warrant. PSOF, Exh. B.  Plaintiff was at home in bed when the warrant was executed.  Id., Exh. B & Exh. P.  Mr. Jorgensen was in the living room of the home when the officers entered the home.  Id., Exh. P.[4]

Plaintiff was placed in handcuffs ("flexicuffs") and removed from the residence to the street. Plaintiff, who was wearing a short nightgown, despite her request, was not allowed to get dressed prior to being removed from her home. PSOF, Exh. B.  Defendants do not assert Plaintiff attempted to obstruct or interfere with the search in any manner of her home. Approximately fifteen minutes later, Plaintiff was provided a blanket, moved to an unmarked police vehicle, and then taken to

---

[4] Mr. Jorgensen was arrested at the time the warrant was executed, but not for any of the criminal conduct alleged in the search warrant; Mr. Jorgensen was arrested on an outstanding misdemeanor warrant issued by a municipal court. No criminal charges against Mr. Jorgensen regarding Defendant Hayman's investigation were filed until an indictment was issued almost three years later, on January 5, 2006.  See Arizona v. Jorgensen, CR2006-005370-001 (Maricopa County Superior Court).

a sheriff's office for questioning.  <u>Id.</u>, Exh. E. Defendant Hayman states in his sworn affidavit that he first had contact with Plaintiff as she was sitting in the unmarked police vehicle in front of her home. DSOF, Exh. 1. Defendant Hayman, who had custody of Mr. Jorgensen, did not take custody of Plaintiff for the purpose of transporting her to the sheriff's office.  <u>Id.</u>, Exh. E.

At the sheriff's office, Plaintiff, in her nightgown and wrapped in a blanket, was read her Miranda rights by Defendant Hayman. <u>Id.</u>, Exh. E.  Defendant Hayman testified at Plaintiff's criminal proceedings that, at the time Plaintiff was read her Miranda rights, "[s]he was being detained in investigative detention." <u>Id.</u>, Exh. E at 17.[5] Defendant Hayman began interviewing Plaintiff at approximately 7:30 or 8:00 a.m. <u>Id.</u>, Exh. E.  At approximately 8 a.m., after Plaintiff had been removed from her home and after Defendant Hayman began interviewing Plaintiff at the sheriff's office, another officer found a substance field-tested as methamphetamine in an inside zip-pocket of a purse located on a kitchen counter at Plaintiff's home; also inside the purse was Plaintiff's identification.  <u>Id.</u>, Exh. C & Exh. E.  Defendant Hayman, who was questioning Plaintiff at the sheriff's office at that time, was informed of the discovery of the methamphetamine by a page and telephone call.  <u>Id.</u>, Exh. B & Exh. E at 41-42.  Defendant

_____

[5] Miranda warnings are required for custodial interrogation occasioned by an arrest, but not for questioning during a mere ordinary investigative detention. <u>Berkemer v. McCarty</u>, 468 U.S. 420, 440, 104 S. Ct. 3138, 3150 (1984); <u>California v. Beheler</u>, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520 (1983).

Hayman advised Plaintiff of the discovery of the methamphetamine in her purse.  Id., Exh. B.

It is unclear from Defendants' pleadings and the evidence whether Plaintiff was actually placed under arrest on February 6, 2003.  See Defendants' Memorandum at 8-12.

Defendants aver in their statement of facts:

> Plaintiff Bettin was in the residence at the time the warrant was served and was detained. [] ... [] During the course of the search of 3250 E. Yale, a baggie containing a white powdery substance field tested as methamphetamine was found in a purse belonging to Laura Bettin. [] **Based on this evidence, Defendant Hayman arrested and detained Ms. Bettin for questioning.** [] Ms. Bettin was released after questioning, but later **re-arrested** and booked.

DSOF at 7-8 (emphasis added).

An Arrest/Booking record indicates Plaintiff was arrested on March 4, 2003, for possession of methamphetamine, and states the violation date as February 6, 2003.  See PSOF, Exh. H.  Defendant Hayman's sworn affidavit submitted in this matter states that, based on the evidence of methamphetamine found in Plaintiff's purse, he arrested Plaintiff and detained her for questioning on February 6, 2003, and "rearrested" her on March 4, 2003.  DSOF, Exh. 1 at para. 7 & para 8.  However, Defendant Hayman's sworn testimony in Plaintiff's criminal case and Plaintiff's sworn affidavit indicate Plaintiff was taken to the sheriff's office, Mirandized, and detained at the sheriff's office at least one-half hour prior to the discovery of the methamphetamine.  See PSOF, Exh. E at 17.  Additionally, Defendant Hayman's "Supplemental Report," completed February 6, 2003, states:

> Based on the search warrant served, Ms.
> Bettin was taken into investigative custody
> and transported to the General Investigation
> Division Offices... to be interviewed. Upon
> started (sic) of this video taped interview,
> Ms. Bettin was advised of her rights per
> Miranda at or about 0740 hours. Ms. Bettin
> stated she understood these rights and agreed
> to be interviewed [as] to the events of the
> search warrant.

Id., Exh. C.

Lastly, Defendant Hayman testified in Plaintiff's criminal proceedings that it was four to seven days after February 6, 2003 that he informed Plaintiff she was under arrest for possession of methamphetamine. PSOF, Exh. E at 18.

The officers continued their search of the residence after Plaintiff, Mr. Jorgensen, and a third resident were removed from the residence. At some point, at least one television news crew was in proximity to the residence.[6] See id., Exh. B. Plaintiff's defense counsel during her state methamphetamine possession proceedings asserted the entry into

---

[6] The exact location of the media, and how the media was alerted to the events occurring at 3250 E. Yale, is not clear. The Court takes judicial notice of a lawsuit filed by Mr. Jorgensen against Belo Interactive and KTVK-TV, an Arizona television station, alleging defamation and false light invasion of privacy "as a result of the February 6, 2003 broadcast of a story regarding the execution of a search warrant ... on a residence in a Phoenix neighborhood where [Mr. Jorgensen] was suspected of running a chop shop..." See Jorgensen v. Belo Interactive, 2006 WL 2056371 (Appellees' brief filed in the United States Supreme Court on July 20, 2006). See also Jorgensen v. Belo Interactive, 127 S. Ct. 168 (2006) (denying certiorari from the Arizona Court of Appeals' decision affirming summary judgment in favor of the defendants). Plaintiff mentions the media's presence in her statement of facts but does not assert in her memorandum of law that the media's presence violated her constitutional rights, a claim on which she would not prevail based on the facts before the Court. Compare Hanlon v. Berger, 526 U.S. 808, 810, 119 S. Ct. 1706, 1708 (1999), and Ramirez v. Butte-Silver Bow County, 298 F.3d 1022, 1029 (9th Cir. 2002).

-14-

her home was "a media event, nothing more." Id., Exh. M at MC0155. The search continued until approximately 7 p.m., i.e., about 13 hours after the search was initiated. Id., Exh. B.

Plaintiff was released from custody after about four hours, at approximately 10:30 a.m. Plaintiff, still in her nightgown and blanket, was left in the lobby of the sheriff's office waiting for her sister to arrive to provide transportation back to her home. See Docket No. 11 & Docket No. 39 at 2. Plaintiff avers that, at some point after she was taken to the sheriff's office for questioning, she returned to her home and witnessed her "property [] covered with news media personnel, along with numerous law enforcement agents. The house was wide open and people were traveling in and out of the residence, carrying bags of unknown property and articles of clothing." PSOF, Exh. B. Plaintiff later "observed live news broadcasts from my home on several local television stations, stating that the property was used to conduct a jet ski chop shop." Id., Exh. B. However, there is no evidence presented to the Court that Defendants invited the news media onto Plaintiff's property or facilitated their activities, if that in fact occurred.

Plaintiff avers that, when she was allowed to return to her home that evening, she could not shut nor lock her front door due to damage from the battering ram. Id., Exh. B. Plaintiff states that personal items seized during the execution of the warrant included the title to her vehicle, a personal computer, printer, scanner, and digital camera. Id., Exh. B.

1    The Court notes the sheriff's department inventory list
2    of seized property lists some items more than once and on more
3    than one occasion refers simply to "misc. paper work."  Id.,
4    Exh. G.  The inventory list included, *inter alia*, a computer, a
5    computer scanner, a digital camera, vehicles and vehicle parts,
6    and financial records, including "financial records of Laura
7    Bettin."  Id., Exh. G.

8    One month later, on March 4, 2003, Plaintiff was
9    arrested at her home by Defendant Hayman, without a warrant, and
10   charged with possession of methamphetamine, and again taken into
11   custody.  Id., Exh. B.  Plaintiff stated she was repeatedly
12   denied an attorney after being arrested and taken into custody.
13   Id., Exh. B. Plaintiff alleges she was "harassed and threatened
14   for more than two hours, then told they were going to teach her
15   a lesson.  She was taken to jail [and] charged with dangerous
16   drug possession."  Docket No. 39 at 3.

17   On October 29, 2003, in Plaintiff's state criminal
18   proceedings on the charge of methamphetamine possession, a
19   Maricopa County Superior Court judge granted Plaintiff's motion
20   to suppress the methamphetamine found at the time of the
21   execution of the search warrant.  Id., Exh. N.  The state court
22   concluded that searching an inner pocket of Plaintiff's purse
23   exceeded the scope of the search warrant, rendering the search
24   unreasonable and requiring the suppression of the evidence.
25   Id., Exh. M & Exh. N.  Because the evidence was suppressed, the
26   criminal charge against Plaintiff was dismissed.  Id., Exh. N.
27   On October 29, 2003, the Maricopa County Superior Court judge
28   who dismissed the methamphetamine possession charge against

-16-

Plaintiff ordered the State of Arizona "to work with [Plaintiff] in returning the property of Laura Lee Bettin to her." Id., Exh. N.  On June 14, 2004, Plaintiff filed a motion in the Maricopa County Superior Court seeking an order of contempt against the State of Arizona for failure to return her property pursuant to the order of October 29, 2003.  Id., Exh. O. Plaintiff filed her complaint in this matter in November of 2004.

### IV Discussion

Federal law provides that a person who, under the color of state law, causes a citizen to be deprived of a constitutional right, is liable to the injured citizen for the deprivation. See 42 U.S.C. § 1983 (2003 & Supp. 2006).  Section 1983 was enacted "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, 112 S. Ct. 1827, 1830 (1992). "The obvious purpose" of enacting section 1983 was "to provide a remedy to parties deprived of constitutional rights by a state official's abuse of his position while acting under color of state law." Haines v. Fisher, 82 F.3d 1503, 1508 (10th Cir. 1996).

### Qualified immunity

Qualified immunity is an affirmative defense and, therefore, the defendant asserting qualified immunity bears the burden of both pleading and proving this defense. Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 1924 (1980).  The determination of whether a law enforcement officer is entitled

to qualified immunity from a plaintiff's section 1983 claims involves a tiered analysis.  See Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001); Moreno v. Baca, 431 F.3d 633, 638 (9th Cir. 2005), cert. denied, 126 S. Ct. 2900 (2006).  The first step of the analysis requires the Court to determine if any of the plaintiff's constitutional rights were violated, viewing the facts in the light most favorable to the plaintiff.  See, e.g., Saucier, 533 U.S. at 201, 121 S. Ct. at 2156; Moreno, 431 F.3d at 638; Johnson v. County of Los Angeles, 340 F.3d 787, 792 (9th Cir. 2003).  If no constitutional right was violated, taking the plaintiff's allegations as true, there is no necessity for further inquiry into the defendant's qualified immunity from the suit.  See Saucier, 533 U.S. at 201, 121 S. Ct. at 2156.

     The second step in the inquiry requires the Court to determine if the violated right was clearly established at the time of the violation.  See, e.g., Moreno, 431 F.3d at 638.  The contours of the violated right must have been clear enough that a reasonable law enforcement officer would have understood that what he was doing violated that individual's constitutional rights.  See Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987); Moreno, 431 F.3d at 638.  An officer is not entitled to qualified immunity "simply because there [is] no case on all fours prohibiting [the alleged] particular manifestation of unconstitutional conduct."  Headwaters Forest Def. v. County of Humboldt, 276 F.3d 1125, 1131 (9th Cir. 2002), quoting Deorle v. Rutherford, 272 F.3d 1272, 1274-75 (9th Cir. 2001).  See also Blankenhorn v. City of Orange, 485 F.3d 463,

475 (9th Cir. 2007).

The Court must consider the "objective legal reasonableness" of the officer's conduct, rather than his subjective motivation, when determining if the officer is entitled to qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S. Ct. 2727, 2738-39 (1982); Brittain v. Hansen, 451 F.3d 982, 988 (9th Cir. 2006); Butler v. Elle, 281 F.3d 1014, 1031 (9th Cir. 2002).[7]

Plaintiff bears the burden of establishing the actions complained of constituted a violation of her constitutional rights. See, e.g., Hydrick v. Hunter, 466 F.3d 676, 705-06 (9th Cir. 2006). Plaintiff also bears the burden of establishing the contour of the underlying constitutional right was clearly established at the time of the alleged misconduct. See id., 466 F.3d at 705-06; Galvin v. Hay, 374 F.3d 739, 745 (9th Cir. 2004). Qualified immunity is immunity from suit, rather than a defense to liability and, accordingly, immunity ordinarily should be decided by the Court as a matter of law. See Hunter v. Bryant, 502 U.S. 224, 228, 112 S. Ct. 534, 537 (1991).

In the context of a motion for summary judgment in a section 1983 action, the defendant bears the burden of establishing there is no genuine issue of material fact to be resolved regarding his immunity. See Moreno, 431 F.3d at 638.

---

[7] Under the "objective legal reasonableness standard," the Court is not permitted to investigate the subjective motivation of the law enforcement officer. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S. Ct. 2727, 2739 (1982); Foster v. Metropolitan Airports Comm'n, 914 F.2d 1076, 1079 n.4 (8th Cir. 1990). "A defendant's good faith or bad faith is irrelevant to the qualified immunity inquiry." Burk v. Beene, 948 F.2d 489, 494 (8th Cir. 1991).

However, if there is a genuine dispute over a material fact regarding the circumstances under which a defendant acted, the Court should make its determination regarding the defendant's immunity after the facts have been developed at trial. See Act Up! Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993).

Although qualified immunity shields an individual defendant from monetary damages, it does not shield a defendant sued in their official capacity from injunctive or declaratory relief. See, e.g., Perry v. Sheahan, 222 F.3d 309, 314 (7th Cir. 2000).

### The seizure of Plaintiff on February 6, 2003

Determining the reasonableness of Plaintiff's seizure on February 6, 2003, requires the Court to review four possible justifications for the seizure: (1) Was the Plaintiff's seizure reasonably necessary to protect the officers' search of her residence; (2) Was the seizure consensual; (3) Was the seizure an investigative detention; and (4) Was the seizure an arrest based upon probable cause?  An individual may initially be seized pursuant to one of these justifications and the seizure may escalate to a seizure based on another premise. See Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc); United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996). The parties do not contend Plaintiff's seizure on February 6, 2003, and transportation to the sheriff's office was consensual and, therefore, the Court need not address the issue of Plaintiff's consent.

The seizure of an individual by the police violates the Fourth Amendment if it is objectively unreasonable under the

circumstances.  See Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002).  A person has been "seized" within the meaning of the Fourth Amendment "when, by means of physical force or a show of authority, [her] freedom of movement is restrained."  United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1878 (1980).  Law enforcement officials may detain a building's occupants while officers execute a search warrant as long as the detention is reasonable.  See Los Angeles County v. Rettele, 127 S. Ct. 1989, 1992-93 (stating a detention is unreasonable if it is "unnecessarily painful, degrading, or prolonged," or involves "an undue invasion of privacy"); Michigan v. Summers, 452 U.S. 692, 705, 101 S. Ct. 2587, 2595 (1981); Dawson v. City of Seattle, 435 F.3d 1054, 1065 (9th Cir. 2006); Ganwich v. Knapp, 319 F.3d 1115, 1120 (9th Cir. 2003).

"An officer's authority to detain incident to a search is categorical," and does not depend on the "quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure."  Muehler v. Mena, 544 U.S. 93, 98, 125 S. Ct. 1465, 1469-70 (2005).  However, as noted supra, a detention conducted in tandem with the execution of a search warrant may be found unreasonable if it is unnecessarily painful, degrading or prolonged, or if it involves an undue invasion of privacy.  See Meredith v. Erath, 342 F.3d 1057, 1062 (9th Cir. 2003).  "Whether a particular seizure falls within the limited authority recognized in Summers to proceed without probable cause depends upon 'both the character of the official intrusion and its justification.'"   Heitschmidt v. City of

Houston, 161 F.3d 834, 837 (5th Cir. 1998).[8]

An investigative detention is a seizure under the Fourth Amendment, but contrary to an arrest, it need not be based upon probable cause.  See, e.g., Morgan v. Woessner, 997 F.2d 1244, 1252 (9th Cir. 1993).  However, unlike the nightly fare presented on television, an officer may not seize an individual, purportedly under the doctrine of "investigative detention," and take them downtown for interrogation based upon mere speculation or whim.  The officer must have a reasonable suspicion supported by objective and articulable facts that criminal activity is occurring and the person seized is a suspect.  See Cortez, 478 F.3d at 1115.  Compare Muehler, 544 U.S. at 101, 125 S. Ct. at 1471-72 (holding reasonable suspicion was not required for the brief questioning of a dwelling's occupants regarding their identification and status during the execution of a search warrant); Illinois v. Lidster, 540 U.S. 419, 427-28, 124 S. Ct. 885, 891 (2004).  The Fourth Amendment is not offended by a warrantless arrest when the officer has

---

[8]
> Summers identified several factors important to its analysis that the intrusion in that case was not great. First, the Court stated that the restraint on liberty was minimal because, unless the respondent intended flight to avoid arrest, he would have little incentive to leave during a search. [] Second, the Court noted that the detention during the search of a residence is unlikely to be prolonged because police are seeking information from the search rather than the person. [] **Finally, the Court stated that the stigma and inconvenience of the detention is likely to be less significant when the detention occurs in the person's home.** []

Heitschmidt v. City of Houston, 161 F.3d 834, 837 (5th Cir. 1998) (emphasis added and citations removed).

probable cause to believe a crime has been committed and that the suspect committed the crime. <u>United States v. Watson</u>, 423 U.S. 411, 417, 96 S. Ct. 820, 824 (1976). "The use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest." <u>Cortez</u>, 478 F.3d at 1115-16 (internal quotations omitted).

Plaintiff's detention outside her residence in her nightgown, notwithstanding her request to dress, while boorish and unprofessional, did not exceed the scope of detention authorized by <u>Summers</u>. However, Defendants did not continue to detain Plaintiff at the scene of the search. Defendants removed Plaintiff from her home and took her to the sheriff's office for questioning without placing Plaintiff under arrest and without having a reasonable belief that Plaintiff was suspected of criminal activity.[9] At that time, any reliance defendants might have had upon a <u>Summers</u> detention evaporated. <u>Ganwich</u>, 319 F.3d at 1124.

The cases cited *supra* discussing a police officer's authority to detain a building's occupants during the execution of a search warrant all involve searches wherein the plaintiff was detained at the location of the search for the purpose of

---

[9] Plaintiff was not under arrest on February 6, 2003, when she was removed from her home and taken to a sheriff's office for questioning. Defendant Hayman swore under oath in Plaintiff's state criminal proceedings that, at the time Plaintiff was read her Miranda rights at the sheriff's office on February 6, 2007, "[s]he was being detained in investigative detention." PSOF, Exh. E at 17. Yet, Defendant Hayman further testified he had no information Plaintiff was involved in any criminal conduct with Mr. Jorgensen. PSOF, Exh. E at 34, 39-40.

protecting the search scene and the officers.  Plaintiff was
removed from her home in her nightclothes and handcuffs around
6:30 a.m. and taken to the sheriff's office for interrogation,
facts which weigh greatly in favor of Plaintiff's claim her
seizure was unreasonable.  See Tekle ex rel. Tekle v. United
States, 457 F.3d. 1088, 1099 (9th Cir. 2006); Walker v. City of
Orem,  451 F.3d 1139, 1148 (10th Cir. 2006) ("We note, at the
outset, that defendants did not have a 'reasonable suspicion'
that plaintiffs were involved with any criminal wrongdoing, and
therefore had no right to subject them to an investigative
detention").

        Taking the facts in the light most favorable to
Defendants for the purpose of Plaintiff's motion for summary
judgment, at best Defendant Hayman suspected Plaintiff, as Mr.
Jorgensen's girlfriend, might be a witness to Mr. Jorgensen's
alleged criminal acts.  Defendants could have served Plaintiff
with a grand jury subpoena and obtained whatever information she
might have possessed through her grand jury testimony.  In this
manner, Plaintiff's Fourth Amendment rights would not have been
violated.  However, Defendants did not exercise this option. The
Court concludes Defendants violated Plaintiff's Fourth Amendment
right to be free of an unreasonable seizure by taking her into
investigative custody without reasonable suspicion of her
criminal conduct or probable cause to arrest her.  See
Heitschmidt, 161 F.3d at 838-39.[10]  Additionally, Plaintiff's

---

[10] In support of their argument that Defendant Hayman did not
violate Plaintiff's constitutional rights, Defendants offer the
affidavit of a purported expert in the field of law enforcement, the
training of law enforcement officers, and police conduct.  The

detention was unnecessarily degrading, and prolonged, and it involved an undue invasion of Plaintiff's privacy.

Having concluded Plaintiff's constitutional right to be free of an unreasonable seizure was violated, the Court must determine if Defendant Hayman is entitled to qualified immunity regarding this claim. "Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law..." Elder v. Holloway, 510 U.S. 510, 516, 114 S. Ct. 1019, 1023 (1994). "To determine whether a right is clearly established, we look to Supreme Court precedent and then to lower court decisions with an eye toward whether the Supreme Court would adopt their analysis." Ortega v. O'Connor, 146 F.3d 1149, 1157 (9th Cir. 1998). To show that the right in question was clearly established, the plaintiff need not prove that the defendant's

---

affidavit asserts Defendant Hayman

> met the standard of care as a reasonable law enforcement officer in drafting the affidavit and search warrant... A reasonable and prudent law enforcement officer would have believed that the search warrant was valid at the time of service. ... Based on the facts and circumstances known to Detective Fred Hayman, he had reasonable suspicion to initially detain Laura Bettin. During the time of the detention, he diligently pursued his investigation to determine whether Laura Bettin was involved in the suspected criminal activity. The length of time she was detained was reasonable under the circumstances.

DSOF, Exh. 3.

The expert usurps the Court's prerogative to determine the law. Given the clearly established federal law on this issue, the purported expert's conclusion that Plaintiff's rights were not violated, i.e., that her detention was reasonable, is certainly not binding on this Court and actually presumes a legal conclusion, rather than offering an opinion admissible at trial.

exact "behavior had been previously declared unconstitutional, only that the unlawfulness was apparent in light of preexisting law."  Blueford v. Prunty, 108 F.3d 251, 254 (9th Cir. 1997).

> [I]f the only reasonable conclusion from binding authority were that the disputed right existed, even if no case had specifically declared, police would be on notice of the right and officials would not be qualifiedly immune if they acted to offend it.

Jensen v. City of Oxnard, 145 F.3d 1078, 1085 (9th Cir. 1998) (concluding a right may be "clearly established" by "common sense and precedent") (internal citations and quotations omitted).  The Court "must look to the law as it existed at the time of the challenged conduct."  Washington v. Lampert, 98 F.3d 1181, 1193 n.20 (9th Cir. 1996).

Defendant Hayman is not entitled to qualified immunity regarding this seizure as a matter of law because an objective officer would have known in February 2003 these actions violated Plaintiff's constitutional rights.  See Ganwich, 319 F.3d at 1123-25.[11]

---

[11]  In Ganwich, the Ninth Circuit held the defendants were not entitled to qualified immunity because it was clearly established in 1999 that a seizure becomes unlawful when it is "more intrusive than necessary," quoting Florida v. Royer, 460 U.S. 491, 504, 103 S. Ct. 1319, 1328 (1983).

> The officers also should have known that a seizure becomes unlawful when it is more intrusive than necessary to accomplish the objectives that justified the seizure in the first place. [] The officers should have recognized that the manner in which they conducted the seizure was significantly more intrusive than was necessary for them to complete the search of the [seized employees' business] premises.

Ganwich v. Knapp, 319 F.3d 1115, 1125 (9th Cir. 2003).

1    A troubling aspect to this case is that the Maricopa
2  County Attorney's Office, Defendants and Defendants' expert,
3  with over thirty years police experience, urge the court to find
4  the way Plaintiff was seized and interrogated to be perfectly
5  acceptable.   Defendants' expert describes the actions as
6  "standard police practice." DSOF, Exh. 3 at 5.  But Defendants'
7  conduct is of the nature which has been repeatedly condemned by
8  the federal courts.   <u>See</u>, <u>e.g.</u>, <u>Ganwich</u>, 319 F.3d at 1124-25;
9  <u>Cortez</u>, 478 F.3d at 1115-16; <u>Desales v. Woo</u>, 860 F. Supp. 1436,
10 1443 (N.D. Cal. 1994).   The Court is left to wonder if such
11 actions are standard policy at the Maricopa County Sheriff's
12 Office?

13            **Violation of Plaintiff's right to counsel**

14           Plaintiff also contends her constitutional rights were
15 violated during her arrest for possession of methamphetamine on
16 March 4, 2003, because Defendants continued to interrogate her
17 after she was arrested and after she requested counsel be
18 present during questioning.  Plaintiff does not assert that she
19 was not read her Miranda rights, and Defendants do not assert
20 Plaintiff was not in custody pursuant to her arrest.  Plaintiff
21 alleges continuing to interrogate her after she requested
22 counsel violated her Fifth Amendment right to counsel and her
23 Fourteenth Amendment right to due process of law.

24           The act complained of did not violate Plaintiff's Fifth
25 Amendment constitutional right to be free of self-incrimination,
26 because the right to be free of self-incrimination is not
27 cognizable in a section 1983 action as opposed to when the
28 plaintiff's statements have been used in criminal proceedings.

-27-

See Chavez v. Martinez, 538 U.S. 760, 766-67, 123 S. Ct. 1994, 2000-01 (2003); Renda v. King, 347 F.3d 550, 559 (3d Cir. 2003); Davis v. Township of Paulsboro, 421 F. Supp. 2d 835 (D.N.J. 2006).[12]   But see Cooper v. Dupnik, 963 F.2d 1220, 1242 (9th Cir. 1992).

The only case indicating Plaintiff could state a cause of action for violation of her "constitutional" right to remain silent and to have counsel present during questioning, i.e., Dupnik, concluded a plaintiff could state a section 1983 claim because the officers conspired to coerce a confession and then ignored the plaintiff's repeated requests for counsel and conducted a four hour interrogation. See id., 963 F.2d at 1242. Dupnik, decided in 1992, has not been regularly followed nor cited in other federal court opinions and has been called into question by other federal courts considering the issue. Accordingly, if Plaintiff had a Fifth Amendment right, enforceable through section 1983, to be free of continued interrogation after invoking her right to have counsel present during questioning, the contours of the right were not clearly defined at the time of these events and Defendant Hayman would be entitled to qualified immunity from liability. See Hanlon v. Berger, 526 U.S. 809, 810, 119 S. Ct. 1706, 1707 (1999).

---

[12] In Davis, the district court concluded that, assuming the plaintiff had been interrogated, "he nevertheless had 'no free-standing Fifth Amendment claim for denial of counsel during his interrogation.'" The district court reasoned that violations of the "prophylactic Miranda procedures do not amount to violations of the Constitution itself .... the right to counsel' during custodial interrogation recognized in [Miranda] is merely a procedural safeguard, and not a substantive right." Davis v. Township of Paulsboro, 421 F. Supp. 2d 835, 848 (D.N.J. 2006).

To the extent Plaintiff asserts Defendants violated her right to adequate representation of counsel in a criminal proceeding pursuant to the Sixth Amendment, her claim also fails as a matter of law.  The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense."  U.S. Const. amend. VI.  However, the Sixth Amendment right to counsel is only guaranteed in all "criminal prosecutions," which the Supreme Court has indicated do not commence until "at or after the initiation of adversary judicial criminal proceedings- whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  Texas v. Cobb, 532 U.S. 162, 167-68, 121 S. Ct. 1335, 1340 (2001).  Accordingly, the United States Circuit Courts of Appeal have determined that the continued questioning of an arrestee, despite their requests for the presence of counsel, does not state a section 1983 claim for violation of the Sixth Amendment right to counsel in criminal proceedings.  See James v. York County Police Dep't, 160 Fed. App. 126, 132 (3d Cir. 2005); Lumley v. City of Dade City, 327 F.3d 1186, 1195 (11th Cir. 2003); Jones v. Cannon, 174 F.3d 1271 (11th Cir. 1999).  Contra McKinley v. City of Mansfield, 404 F.3d 418, 439 (6th Cir. 2005).

**Plaintiff's Fourth Amendment claim regarding the search**

The Fourth Amendment to the United States Constitution, applicable to the State of Arizona pursuant to the Fourteenth Amendment, prohibits unreasonable searches and seizures.  See, e.g., Beck v. Ohio, 379 U.S. 89, 90-91, 85 S. Ct. 223, 225 (1964).  Although weakened in application by federal

jurisprudence over time, the Fourth Amendment's plain language clearly recites our society's centuries-old principle of government respect for the privacy of each citizen's home:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.   The specific constitutional violation alleged in this case, i.e., the government's unreasonable physical entry into a citizen's home, has been called "the chief evil against which the wording of the Fourth Amendment is directed."   <u>Wilson v. Layne</u>, 526 U.S. 603, 610, 119 S. Ct. 1692, 1697 (1999).

There is no intellectually serious argument which can be raised that law enforcement officers do not know that an unreasonable intrusion into a citizen's home violates that citizen's Fourth Amendment rights.

> The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter-all his force dares not cross the threshold of the ruined tenement!

<u>Payton v. New York</u>, 445 U.S. 573, 601 n.54, 100 S. Ct. 1371, 1388 n.54 (1980)(quoting William Pitt's statement in the British House of Commons in 1763), <u>also</u> <u>quoted</u> <u>in</u> <u>McClish v. Nugent</u>, 483 F.3d 1231, 1255 (11th Cir.); <u>O'Rourke v. City of Norman</u>, 875

F.2d 1465, 1473 (10th Cir. 1989).[13]  "The Fourth Amendment is the guarantee of every citizen that his home will be his castle, safe from the arbitrary intrusion of official authority. It is no barrier at all if it can be evaded by a policeman concocting a story that he feeds a magistrate."  Baldwin v. Placer County, 418 F.3d 966, 970 (9th Cir. 2005).  However, the Supreme Court has also cautioned lower courts that "after-the-fact scrutiny by courts of the sufficiency of an affidavit [supporting a search warrant] should not take the form of *de novo* review. ..."  Illinois v. Gates, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983).

Plaintiff argues the search violated her Fourth Amendment rights. Plaintiff alleges the search warrant was invalid, based on stale and false information, and that it was not supported by probable cause.  Accordingly, Plaintiff contends the execution of the search warrant violated her constitutional rights as she was the owner of and a resident of the home.

**The issuance of the warrant and Defendant Hayman's affidavit**

To prevail on a section 1983 claim that a defendant employed deception in obtaining a search warrant, a plaintiff must make a substantial showing that the defendant deliberately or recklessly made false statements or omissions that were material to the magistrate's finding of probable cause to issue

---

[13] An excellent history of the philosophical and legal origins of the Fourth Amendment and its jurisprudence is presented by Robert J. McWhirter in *Molasses and the Sticky Origins of the 4th Amendment*.  See 42 Ariz. Att'y, 16-34 (June 2007).

the warrant.  See Franks v. Delaware, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676 (1978); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002); Liston v. County of Riverside, 120 F.3d 965, 972-75 (9th Cir. 1997).  The plaintiff must establish that, but for the defendant's dishonesty or omission, the magistrate would not have issued the search warrant.  See Liston, 120 F.3d at 972-75; Hervey v. Estes, 65 F.3d 784, 788 (9th Cir. 1995).

An officer's action in obtaining a warrant is not objectively reasonable if he submitted an affidavit containing facts he knew to be false or would have known to be false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause is included with the false information.  See Branch v. Tunnell, 937 F.2d 1382, 1387 (9th Cir. 1991); Liston, 120 F.3d at 972.  It is clearly established that judicial deception may not be employed to obtain a search warrant, whether the deception involves misstatements or omissions.  See Franks, 438 U.S. at 155-56, 98 S. Ct. at 2676; Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1295 (9th Cir. 1999).  Accordingly, if an officer omits or fabricates a material fact for the purpose of enhancing support for a conclusion of probable cause, the shield of qualified immunity is lost.  See Malley v. Briggs, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 1097-98 (1986); Golino v. City of New Haven, 950 F.2d 864, 870-71 (2d Cir. 1991).  The Court must determine the materiality of the alleged false statements or omissions as a matter of law.  See Butler, 281 F.3d at 1024;

1   <u>Hervey</u>, 65 F.3d at 789.[14]

2   Probable cause to support a search warrant does not

3   require an actual showing of criminal activity at that specific

4   location, but instead is satisfied by a probability or

5   substantial chance the search will reveal evidence of criminal

6   activity.   <u>See</u> <u>Gates</u>, 462 U.S. at 238-39, 103 S. Ct. at 2332;

7   <u>Dawson</u>, 435 F.3d at 1062.   Nonetheless, probable cause for a

8   warrant may not be predicated on the basis of a "reckless or

9   prevaricating tale" told by an unreliable and uncorroborated

10   informant.   <u>See</u> <u>Gates</u>, 462 U.S. at 244-45, 103 S. Ct. at 2335.

11   Plaintiff contends Defendant Hayman made purposefully

12   false statements and omitted material information in the

13   affidavit supporting the search warrant.   Plaintiff alleges:

14   > Defendant's affidavit fails to establish probable cause to support the search of
15   > Plaintiff's residence.   Plaintiff was not a suspect in any crime.   There is nothing in
16   > the affidavit referencing any illegal activity at Plaintiff's home.   Defendant did
17   > not witness any activity, receive any information pertaining to plaintiff's
18   > residence being used to conduct criminal activity, nor were any facts recited that
19   > would support probable cause to believe that Plaintiff or any other person at the
20   > residence was involved in conducting a chop shop or any other criminal activity.
21   > Detective Hayman's sworn testimony states that Plaintiff was not suspected of doing
22   > anything illegal at her residence in regard to Jorgensen's business.
23   > Detective Hayman's affidavit contained misleading facts and omitted material facts.
24   > Hayman knew the residence was owned by

25   _____

26   [14] Whether an omission is material depends on whether the decision-making body would consider it important in reaching its
27   decision.   <u>See</u> <u>Hervey v. Estes</u>, 65 F.3d 784, 788 (9th Cir. 1995) (holding the materiality of misrepresentations in an affidavit
28   alleging probable cause depends on whether the information would likely have influenced the decision to issue the warrant).

Plaintiff, yet failed to state this in the affidavit. [] Rather, Hayman states "the residence of Terry Jorgensen," which was actually unknown to Hayman at that time.

Additionally, Hayman knew Jorgensen's outstanding warrant was for a traffic violation out of Northeast Justice Court, instead specifically stated a warrant in connection with an incident allegedly involving HIN violations which occurred at Bartlett Lake. Citations issued at Bartlett Lake are Mesa Court jurisdiction.

Hayman's affidavit was misleading in stating throughout "HIN" irregularities, "HIN appeared to be chiseled." No criminal citations were issued in any of the events described. Jorgensen was never cited as a result of any of the alleged incidences described, with the exception of the on site inspection performed by Fish and Game on April 29, 2002. ... In each and every incident described in the affidavit, the owners of the watercraft were contacted, and none of the watercraft had been reported stolen. ...

**The statements made in the affidavit reference events which alleged occurred six months or more prior to the affidavit being submitted**, related alleged events that took place in an entirely different location than the residence where the warrant was executed, with nothing in the affidavit indicating activities associated with a chop shop or stolen property.

Docket No. 40 at 2-3 (emphasis added).

While this court, if initially presented with the search warrant affidavit, may have questioned the staleness of certain information and the request to search the residence for AA Best related evidence, it is clear the court in this proceeding may not conduct a *de novo* review. <u>Gates</u>, 462 U.S. at 236. Except as discussed below, it was objectively reasonable for the officers, in good faith, to believe the search warrant in general was valid. <u>Saucier</u>, 533 U.S. at 202. Plaintiff asserts the warrant was deficient because the affidavit did not

indicate Plaintiff was the owner of the home. The Court concludes this fact was not material to the issuance of the warrant. Additionally, the search warrant was not predicated on the fact that a warrant for Mr. Jorgensen's arrest had been issued by any court, and it was not necessary that Plaintiff be suspected of a crime for the warrant regarding the residence to be properly issued. The statement of the former AA Best employee, combined with the statements of others relating to the unauthorized use of watercraft and altering of identification numbers, in addition to the observations of law enforcement during the aerial surveillance, are sufficient to establish probable cause notwithstanding Plaintiff's claims of error.

**The execution of the search warrant**

The Fourth Amendment to the United States Constitution prohibits the unreasonable search and seizure of citizens and their private property. A residence search is presumptively reasonable if it is conducted pursuant to search warrant issued by a lawful magistrate. See United States v. Ventresca, 380 U.S. 102, 109, 85 S. Ct. 741, 746 (1965) (holding the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause to search the premises). As stated supra, it is presumed that law enforcement officers are aware that an unreasonable execution of a search warrant violates the Fourth Amendment. Cf. San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 974-75 (9th Cir.), cert. denied, 126 S. Ct. 796 (2005). Compare United States v. Williams, 687 F.2d

-35-

290, 293 (9th Cir. 1982).

Plaintiff contends the manner of the execution of the warrant violated her right to be free of unreasonable searches.

Defendant Maricopa County Sheriff's Officers' early morning entry into the home via a battering ram was predicated on the allegation Mr. Jorgensen was somehow affiliated with the Hells Angels motorcycle club and the allegation that he used or distributed methamphetamine.  In truth, no evidence of either accusation regarding Jorgensen was found as a result of the search of Plaintiff's residence.  Plaintiff was never charged with any crime regarding the alleged operation of a "chop shop" at her home.  The Court agrees with Plaintiff's criminal counsel that Defendants' over-the-top execution of the warrant, i.e., via a SWAT team with a battering ram after, apparently, alerting the press, was likely intended to be a media event involving accusations of motorcycle gangs, methamphetamine rings, and a watercraft chop shop, which salacious allegations did not prove to be entirely true--Mr. Jorgensen is not charged with gang affiliation nor drug crimes.

Although a close issue, viewing the facts in the light most favorable to the Plaintiff, the Court concludes that the authority to seize evidence of an alleged illegal watercraft chop shop, together with the information regarding Mr. Jorgensen's use or possible distribution of methamphetamine in the past, did justify the level of intrusion and property damage that occurred during the search of Plaintiff's residence. Compare San Jose Charter of Hells Angels Motorcycle Club, 402 F.3d at 971-72 (concluding a search was unreasonably executed

because of the extent of the destruction of property caused by the seizures, i.e., in executing the warrants, the officers cut the mailbox off its post, jack-hammered the sidewalk outside the property, and broke the refrigerator, stating "'unnecessarily destructive behavior, beyond that necessary to execute [the] warrant[s] effectively, violates the Fourth Amendment.'", quoting Liston, 120 F.3d at 979.

**The warrant was overbroad**

Plaintiff's pleadings contend the search warrant was overbroad and lacked particularity. Construing Plaintiff's *pro se* pleadings broadly and looking at the uncontested facts of this matter, the Court concludes portions of the search warrant were facially invalid because of overbreadth and lack of particularity and, accordingly, portions of the execution of the search were unreasonable.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. In Groh v. Ramirez, 540 U.S. 551, 124 S. Ct. 1284 (2004), the United States Supreme Court stated the four requirements for a legitimate search warrant. To comport with the Fourth Amendment a warrant must: (1) be based on probable cause; (2) be supported by a sworn affidavit; (3) describe particularly the place of the search; and (4) describe particularly the persons or things to be seized. Id., 540 U.S.

at 557, 124 S. Ct. at 1289-90.

A search warrant which is facially overbroad is not reasonable and a seizure of property pursuant to a facially invalid warrant is a violation of the property owners' Fourth Amendment rights. See Groh, 540 U.S. at 557-58, 124 S. Ct. at 1289-90; Lesoine v. County of Lackawanna, 77 Fed. App. 74, 79 (3d Cir. 2003). Compare Davis v. Gracey, 111 F.3d 1472, 1478-79 (10th Cir. 1997).[15]

"The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." Groh, 540 U.S. at 561-62, 124 S. Ct. at 1292, citing, inter alia, Stanford v. Texas, 379 U.S. 476, 85 S. Ct. 506 (1965). Compare

---

[15] The description given in the warrant was sufficient to provide a meaningful limitation on the search, and was far narrower than those we have found lacking sufficient particularity. We have invalidated warrants for overbreadth where the language of the warrants authorized the seizure of "virtually every document that one might expect to find in a ... company's office," including those with no connection to the criminal activity providing the probable cause for the search. Leary, 846 F.2d at 602[]. ... see also United States v. Brown, 984 F.2d 1074, 1077 (10th Cir. 1993) (holding overbroad language authorizing a search for "other item which the officers determine or have reasonable belief is stolen"). Similarly, the Ninth Circuit found insufficiently particular a warrant which "authorized the seizure of virtually every document and computer file" at the target company. United States v. Kow, 58 F.3d 423, 427 (9th Cir. 1995). The court emphasized that the warrant "contained no limitations on which documents within each category could be seized or suggested how they related to specific criminal activity." Id.

<u>Dawson</u>, 435 F.3d at 1064-65; <u>Lawmaster v. Ward</u> 125 F.3d 1341, 1347-48 (10th Cir. 1997) (holding the warrant's description of property the officers were permitted to search for and seize was sufficiently narrow to "proscribe a general exploratory search" of the residence).

An officer who prepares a plainly invalid warrant that a reasonably competent officer should know was deficient is not entitled to immunity, despite the approval of the warrant by a magistrate. <u>See</u> <u>Groh</u>, 540 U.S. at 563-64, 124 S. Ct. at 1293. It is presumed that officers executing an overbroad warrant are aware of the unreasonableness of their behavior. <u>See</u> <u>Ortiz v. Van Auken</u>, 887 F.2d 1366, 1370 (9th Cir. 1989). <u>See also</u> <u>Motley v. Parks</u>, 432 F.3d 1072, 1081-82 (9th Cir. 2005) (concluding the officer(s) who "plan and lead" the execution of the warrant are responsible for ensuring their actions are lawful); <u>Ganwich</u>, 319 F.3d at 1125 n.7.

The search warrant and supporting affidavit in this matter are prime examples of how not to draft a search warrant and affidavit in a complex criminal investigation. If the warrant and affidavit had been presented, as drafted, to the undersigned, they would have been immediately rejected. The following examples are illustrative of the warrant's many defects.

The search warrant gives permission to law enforcement officers to search the residence at 3250 East Yale, and certain electronic equipment including a personal computer, which presumably would be located at the residence, and four vehicles (a 1994 Dodge Truck, a 1998 Chevy LeBaron, a 1990 Mazda and a

1987 Nissan), whose locations and ownership were not specified. Among other items, the following categories of evidence were specified in the warrant:

1. "Any items of personal property belonging to the victims or victims not yet identified."

This class of evidence begs the question of how the officers could even differentiate between property lawfully belonging to the three residents of 3250 East Yale and alleged unknown or non-identified victims' property as the officers do not even know if there are "additional" victims. This portion of the warrant gives no objective direction whatsoever to the officers as to who the victims or class of victims are or how to distinguish their property. Accordingly, this provision in the warrant is overbroad.

2. "Any and all electronic data processing and storage devices, computer and computer systems [etc.]."

This class of evidence is not limited in any way as to time or relationship of the electronic information to the alleged crimes and potentially includes any personal information belonging to the three residents (or others) which may not be related to the alleged crimes. This portion of the warrant is also overbroad.

3. The warrant also provides for the seizure of:

All of the records below, whether stored on paper, on magnetic media ... or any other storage media, together with indicia of use, ownership, possession or control of such records. Any and all documents including E-mail and chat logs related to account(s) with and (sic) 'On Line' or bulletin board services including but not limited to bills, receipts, canceled checks, bank statements,

-40-

applications and advertisements.  Any and all diaries, logs notations, telephone/address books, telephone answering machine tapes, correspondents, and/any other documents tending to show any correspondence with companies or persons supplying, purchasing, distributing or trading equipment.

This class of evidence has no limitations whatsoever as to time, purpose of the record, the communication (personal or business) or the participant.  There is no limitation regarding any alleged criminal activity to which this evidence might be probative.  Accordingly, this portion of the warrant is also overbroad.

4. The warrant also provides for the seizure of:

Financial Records-People involved in Fraudulent Crimes often generate a substantial volume of cash. The profit generated by this fraudulent means are used to purchase luxury items, vehicles, major appliances, jewelry, and real property. These records are invaluable in determining how much profit the perpetrator is making above legitimate reported income and locating how these people utilize the profits from illegal transactions. These records include bank accounts, deposits and withdraws, loan agreements, sales receipts, watercraft rental contracts, investment agreements, income tax records, money wires transfers receipts, etc. It is known that these records are often stored in paper form. It is further known that these records may also be stored in the form of electronic or magnetic media on recording tapes, microchips, diskettes, disk, disk drive and other electronic and magnetic media storage devices.

This statement specifying a category of evidence is especially egregious.  It is absolutely clear Defendant Hayman simply copied and pasted this language verbatim from his affidavit for the search warrant into the search warrant itself. The paragraph reflects Defendant Hayman's personal opinion

(presumably based upon his undefined training and experience) as to certain records which may be present at the residence and what they may reflect in relationship to the investigation. While it may have been appropriate for Defendant Hayman's personal opinions to have been expressed in his affidavit in support of the warrant it was totally inappropriate to be found in the warrant itself.  One can only ponder whether the Justice of the Peace read this clause prior to issuing the warrant.

5. "Any photographs tending to show an association to the victim and or other person(s) involved in the crime, be they identified or unidentified."

This category suffers from the same defects as the first overbroad category analyzed *supra*.

6. "Any other evidence not yet identified, which tends to establish that the crime of, **Removal of Hull Identification numbers, Unlawful use of means of transportation, Conducting a chop shop, Fraudulent schemes.**  Has been committed and, **Terry L. Jorgensen (DOB 04-16-56)** has committed such crime." (emphasis in original)

This paragraph is simply a broad catchall which has no objective standards and leaves the question as to what should be seized solely to the subjective beliefs of the executing officers. The provision is clearly overbroad.

6. The four automobiles.

The warrant permitted the searching of four automobiles but does not indicate where they were located or where they were expected to be located.  The only mention in Defendant Hayman's search warrant affidavit of a possible reason to search an

automobile is found on page twenty-six where Mr. Jorgensen tells investigators he keeps rental contracts "in his car."   Yet nowhere in the affidavit does it mention that any of the four automobiles were owned by Mr. Jorgensen or that he even had access to the vehicles.   Therefore, there is absolutely no probable cause to search any of the four automobiles as allegedly being "his car."

These significant portions of the warrant are overbroad, rendering the warrant facially invalid and its execution objectively unreasonable.   Defendants may not rely upon Defendant Hayman's affidavit in support of the warrant to cure the facial invalidity because the affidavit was not attached to, nor incorporated by reference, into the search warrant.   See, e.g., Groh, 540 U.S. at 557-58.   The language of the Fourth Amendment requires particularity in a search warrant itself, rather than in the non-attached supporting documents and, accordingly, even if an application for a warrant adequately described the "things to be seized," the warrant itself is not saved from facial invalidity.   See Massachusetts v. Sheppard, 468 U.S. 981, 988 n.5, 104 S. Ct. 3424, 3428 n.5 (1984).

Many law enforcement officers view possible defects in the obtaining and serving of search warrants solely in terms of suppression of the resulting evidence in criminal proceedings. However, Arizona law indicates potential civil and criminal penalties may apply if state law enforcement officers willfully exceed their authority.   See Ariz. Rev. Stat. Ann. § 13-3925(D) (2001 & Supp. 2006).   And, as in this matter, the execution of

an overbroad search warrant may result in liability pursuant to section 1983.

The Court concludes the execution of the overbroad portions of the warrant subjected Plaintiff to an unreasonable search, violating a clearly established right under the Fourth Amendment to the United States Constitution.[16] As noted, supra, Defendant Hayman is not entitled to qualified immunity with regard to the overbroad portions of the warrant as a matter of law. See Groh, 540 U.S. at 563-64, 124 S. Ct. at 1293. Compare Lesoine, 77 Fed. App. at 80 (concluding the officer in charge of the investigation who drafted the overbroad warrant was not entitled to qualified immunity as a matter of law).

---

[16] In reaching this conclusion the Court must determine whether this finding invalidates the entirety of the search or merely the portion of the search related to the invalid portions of the warrant. If the Court were to determine the warrant to be a "general warrant" the only remedy would be to invalidate the entirety of the search. However, where a warrant is "overbroad" the doctrine of "redaction" is applicable. See United States v. Yusuf, 461 F.3d 374, 392-94 (3d Cir. 2006) (regarding a Franks hearing in a criminal matter). In criminal cases, this doctrine has been referred to by various courts as "severability," "severance," "partial suppression" and "redaction." See United States v. Sells, 463 F.3d 1148, 1150 n.1 (10th Cir. 2006). Although normally raised in criminal suppression motions, it is also applicable to section 1983 proceedings. Cf. Baldwin v. Placer County, 418 F.3d 966, 971 (9th Cir. 2005), cert. denied, 126 S. Ct. 1331 (2006)(discussing redaction of portions of an affidavit to determine if probable cause remains absent the improper information); Harman v. Pollock, 446 F.3d 1069, 1086(10th Cir. 2006); Shamaeizadeh v. Cunigan, 338 F.3d 535, 546 (6th Cir. 2003). Accordingly, as portions of the warrant are not overbroad, the entirety of the search was not unconstitutional, but only that portion conducted to, and theoretically authorized by, the overbroad portions of the warrant. See, e.g., United States v. Christine, 687 F.2d 749, 758 (3d Cir. 1982). See also Donovan v. Fall River Foundry Co., Inc., 712 F.2d 1103, 1112 (7th Cir. 1983) (holding, in the context of a Bivens action, that, where a warrant was facially overbroad but execution of the warrant with regard to the plaintiff in the Bivens action was not unconstitutional, there was no violation of the plaintiff's constitutional rights because the constitutional violation was not the actual "cause" of the alleged injury).

-44-

**Seizure and retention of Plaintiff's property**

Plaintiff contends that Defendants are wrongfully holding her personal property, in violation of her right to due process of law pursuant to the Fifth and Fourteenth Amendments.[17] Defendants aver retaining Plaintiff's property is necessary, as the property is to be used as evidence in their prosecution of Mr. Jorgensen.[18]

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." In <u>Soldal v. Cook County</u>, the Supreme Court reiterated that the Fourth Amendment applies to civil cases, and protects citizens' property interests, including their right to the possession of their personal effects. 506 U.S. 56, 67, 113 S. Ct. 538, 546-47 (1992). <u>See also</u> <u>Oliver v. United States</u>, 466 U.S. 170, 177 n.7, 104 S. Ct. 1735, 1740 n.7 (explaining that the framers would have understood "effects" to refer to personal, rather than real, property). "A 'seizure' of property ... occurs when 'there is some meaningful interference with an

---

[17] A section 1983 claim for violation of the Fifth Amendment is not cognizable when the claim falls within the ambit of the Fourth Amendment or the Fourteenth Amendment's procedural due process clause. <u>See</u>, <u>e.g.</u>, <u>Presley v. City of Charlottesville</u>, 464 F.3d 480, 491 (4th Cir. 2006). If a particular Constitutional amendment provides an explicit basis for protection against a government action, the specific amendment and not the more generalized notion of substantive due process must be the basis for analyzing the claim. <u>See</u>, <u>e.g.</u>, <u>Albright v. Oliver</u>, 510 U.S. 266, 273, 114 S. Ct. 807, 812-13 (1994); <u>Russo v. City of Hartford</u>, 158 F. Supp. 2d 214, 232 (D. Conn. 2001).

[18] The docket of the Maricopa County Superior Court indicates Mr. Jorgensen's trial was again reset on June 1, 2007.

individual's possessory interests in that property.'"   <u>Soldal</u>, 506 U.S. at 61, 113 S. Ct. at 543, <u>quoting</u> <u>United States v. Jacobsen</u>, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656 (1984); <u>Pepper v. Village of Oak Park</u>, 430 F.3d 805, 808-09 (7th Cir. 2005).

A claim that the government is retaining one's property does not, arguably, state a claim for violation of the Fourth Amendment.   <u>See</u> <u>Lee v. City of Chicago</u>, 330 F.3d 436, 466 (7th Cir. 2003); <u>Fox v. Van Oosterum</u>, 176 F.3d 342, 351 (6th Cir. 1999) ("the Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of property."); <u>Bonds v. Cox</u>, 20 F.3d 697, 701-02 (6th Cir. 1994) (concluding a plaintiff might have a Fourth Amendment right regarding property unreasonably "seized," by virtue of the property's destruction, during the execution of a search warrant).

However, the Fourteenth Amendment provides that an individual who is deprived of a property interest without due process of law has been deprived of a constitutional right. Accordingly, a plaintiff may state a cause of action based on their right to due process if the defendant takes and refuses to return their property under certain circumstances.   <u>See also</u> <u>Ali v. Ramsdell</u>, 423 F.3d 810, 814 (8th Cir. 2005).

> The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, "only against deprivations without due process of law." <u>Parratt v. Taylor</u>, 451 U.S. 527, 537, 101 S. Ct. 1908, [] (1981) []... "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State

> provided, and whether it was constitutionally adequate." <u>Zinermon v. Burch</u>, 494 U.S. 113, 126, 110 S. Ct. 975, [] (1990).
> ... in evaluating what process satisfies the Due Process Clause, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.   When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy. .... In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing. ... Under those circumstances, "the availability of post-deprivation procedures will not, ipso facto, satisfy due process."

<u>Rivera-Powell v. New York City Bd. of Elections</u>, 470 F.3d 458, 464-65 (2d Cir. 2006) (internal citations and quotations omitted).

Accordingly, if the challenged government conduct is "random and unauthorized," the availability of a meaningful post-deprivation remedy is adequate to satisfy due process.  <u>Id.</u>

> If, on the other hand, [the challenged action] was part of an established state procedure, such that the availability of a post-deprivation remedy would not *automatically* satisfy due process, we would merely go on to determine what process was due.[]. This we do by balancing the following three factors:
> > First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335, 96 S.Ct. 893, [] (1976).

<u>Id.</u>, 470 F.3d at 466.  In <u>Rivera-Powell</u>, the Court concluded the

availability of both a pre-deprivation and post-deprivation process to address the alleged harm precluded a due process claim with regard to the deprivation.  See id.[19]

The requirement of pre-deprivation due process in the context of claims regarding property seized during the execution of a search warrant is met by the requirement that a valid search warrant be issued upon a showing of probable cause by a neutral magistrate.  Cf. City of West Covina v. Perkins, 525 U.S. 234, 240-41, 119 S. Ct. 678, 681-82 (1999); Fuentes v. Shevin, 407 U.S. 67, 93 n.30, 92 S. Ct. 1983, 2001 n.30 (1972). Accordingly, to succeed on her due process claim, Plaintiff must establish that the post-deprivation procedure provided by the state regarding the seizure of her property was unconstitutional, i.e., the process does not provide Plaintiff the requisite opportunity to meaningful challenge the state action required by the United States Constitution.  See Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) ("It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim"); Alexandre v. Cortes, 140 F.3d 406 (2d Cir. 1998).

An Arizona Superior Court judge ordered Defendants to "work" with Plaintiff in returning her property to her when it dismissed the criminal charge against Plaintiff.  Plaintiff

---

[19] The only published opinion issued by a federal court concluding a plaintiff may state a section 1983 claim for seizure and retention of personal property, seized pursuant to a search warrant, "regardless" of whether the plaintiff had an adequate post-deprivation remedy, is a cursory opinion issued by the Eighth Circuit Court of Appeals in Lathon v. City of St. Louis, 242 F.3d 941 (2001).

filed a motion in state court, in her concluded criminal proceedings, seeking an order of contempt of that court because Defendants did not "work" to return her property to her, which motion was never addressed by that court.  Plaintiff alleges Defendants have not responded to her numerous communications regarding the judge's order or regarding the return of her property.

Arizona law provides a remedial process, i.e., an action to controvert, for those seeking the return of property seized during the execution of a search warrant:

> If an owner of seized property controverts the grounds on which the warrant was issued, the magistrate shall proceed to take testimony relative thereto unless a proceeding pursuant to chapter 39 of this title is or has been initiated relating to the same property interest. .... If it appears that the property taken is not the same as that described in the warrant and is not within § 13-3916, subsection C, D or E or § 13-3925, subsection C, or that probable cause does not exist for believing the items are subject to seizure, the magistrate shall cause the property to be restored to the person from whom it was taken if the property is not such that any interest in it is subject to forfeiture or its possession would constitute a criminal offense.

Ariz. Rev. Stat. § 13-3922 (2001 & Supp. 2006).

Plaintiff does not allege there was no post-deprivation process available to her regarding her seized property, but alleges that the process was inadequate.

A post-deprivation remedy is unconstitutionally inadequate only if it is "meaningless" or "nonexistent." Hamlin v. Vaudenberg, 95 F.3d 580, 585 (7th Cir. 1996).  Accordingly, the federal courts have concluded a post-deprivation remedy is,

-49-

as a matter of law, not inadequate or unavailable if the property owner engage in the process provided by the state.  See New Alaska Dev. v. Guetschow, 869 F.2d 1298, 1305 (9th Cir. 1989); New York State Nat'l Org. for Women v. Pataki, 261 F.3d 156, 169 (2d Cir. 2001); Economic Dev. Corp. of Dade County v. Stierheim, 782 F.2d 952, 955 (11th Cir. 1986).

The Court has been unable to locate a judicial decision where a plaintiff's property was seized by way of a facially invalid search warrant, the plaintiff obtained a state court order which should have returned her property to her, the order was ignored, and over four years later, through a section 1983 action, is still attempting to obtain her property. Nonetheless, according to the above authority, Defendants are entitled to judgment as a matter of law regarding Plaintiff's claim that Defendants' continued retention of Plaintiff's personal property violates her right to procedural due process of law. See Malaponis v. Regan, 335 F. Supp. 2d 285, 292-93 (D. Conn. 2004).

**Municipal and supervisor liability**

Having concluded that Plaintiff's Fourth Amendment rights were violated by Defendant Hayman's execution of an overbroad search warrant and by his unreasonable seizure of Plaintiff, the Court must determine if there is municipal or supervisory liability regarding these constitutional violations.

Plaintiff contends Defendant Maricopa County Sheriff's Office has a custom and practice of unreasonably executing search warrants, however, Plaintiff's contentions relate to the means of execution of the warrant, i.e, she asserts the policy

of executing search warrants by means of a SWAT team in these circumstances is unconstitutional.   As discussed *supra*, the Court concludes, as a matter of law, that the execution of the valid portions of the warrant were not unreasonable.

The Court has concluded that Defendant Hayman, as the chief case agent, drafted, obtained and was responsible for the execution of a search warrant which was, in part, overbroad, in violation of Plaintiff's Fourth Amendment rights.  Additionally, the Court has concluded that Defendant Hayman, as the case agent responsible for the execution of the warrant and as the individual who detained Plaintiff at the sheriff's office, violated Plaintiff's constitutional rights by unreasonably seizing Plaintiff.

A municipality is liable for the constitutional torts of its employees under section 1983 when its "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact."  City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989).  A municipal defendant is entitled to summary judgment unless the need for additional or different training is so obvious and the inadequacy so likely to result in a constitutional violation that the municipal policy-makers can be said to have been deliberately indifferent to the inadequate training.  See Solis v. City of Columbus, 319 F. Supp. 2d 797, 811 (S.D. Ohio 2004), citing Shamaeizadeh v. Cunigan, 338 F.3d 535, 537 (6th Cir. 2003).  Additionally, summary judgment is not appropriate if there is a genuine issue of material fact as to whether the municipality's operational policy or lack of policy resulted in

the violation of the plaintiff's constitutional rights.   <u>See</u>
<u>Solis</u>, 319 F. Supp. 2d at 813.

Defendants offer the affidavit of a purported expert in
law enforcement which summarily concludes all the actions taken
by the officers on February 6, 2003, were reasonable and met the
prevailing standard of care.  DSOF, Exh. 3.  The affidavit does
not reference the specific training provided to Defendant Hayman
or other MCSO officers.  Additionally, affidavits stating that
a defendant officer was properly trained with regard to Fourth
Amendment issues which are conclusory are insufficient to
establish, as a matter of law, that a municipality adequately
trained its officers.  <u>Solis</u>, 319 F. Supp. 2d at 812-13.

However, with regard to the violation of Plaintiff's
Fourth Amendment rights by execution of the overbroad portions
of the warrant and her unreasonable seizure, the Court concludes
Plaintiff has not established municipal liability.  <u>See</u>, <u>e.g.</u>,
<u>Blankenhorn</u>, 485 F.3d 484-85 ("evidence of the failure to train
a single officer is insufficient to establish a municipality's
deliberate policy").  Plaintiff has not offered any evidence,
such as other specific instances where overbroad search warrants
were executed, that any alleged failure to train MCSO officers
caused the unconstitutional search or the improper seizure.  <u>See</u>
<u>Canton</u>, 489 U.S. at 390, 109 S. Ct. at 1197 (requiring that, as
a prerequisite for municipal liability, the failure to train
"actually causes injury"); <u>Olender v. Township of Bensalem</u>, 32
F. Supp. 2d 775, 783 (E.D. Pa. 1999).  Plaintiff presents no
evidence that Defendant Hayman would have acted differently if
MCSO had provided more particularized training on the Fourth

Amendment's   seizure   prohibitions   and   search   warrant
particularity requirements.  See Dawson, 435 F.3d at 1065.

Additionally, with regard to the liability of Defendant
Arpaio, a sheriff not personally involved in a challenged action
is  only  liable  for  the  deprivation  of  the  plaintiff's
constitutional rights if the plaintiff establishes the sheriff
failed to train or supervise the officers involved and there is
a causal connection between the alleged failure to supervise or
train and the alleged violation of the plaintiff's rights.  See,
e.g., Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir.
2000).   Proof  of  a  single  instance  of  a  constitutional
violation, rather than a pattern of similar violations, is not
sufficient to preclude summary judgment in favor of a defendant
sheriff.  See id.; Cozzo v. Tangipahoa Parish Council--President
Gov't, 279 F.3d 273, 286-87 (5th Cir. 2002).  Plaintiff has not
established  Defendant  Arpaio  had  notice  that  the  training
procedures  and  supervision  regarding  the  drafting  of  search
warrants,  and  her  unreasonable  seizure,  were  inadequate  and
likely to result in a constitutional violation and, accordingly,
Defendant  Arpaio  is  not  liable  for  any  damages  regarding
Plaintiff's claims.  See Wever v. Lincoln County, 388 F.3d 601,
606-07 (8th Cir. 2004).

**Requested relief**

As stated *supra*, Plaintiff is entitled to judgment as
a matter of law on her claims that Defendant Hayman violated her
Fourth Amendment right to be free from an unreasonable search
and her Fourth Amendment right to be free from an unreasonable
seizure.  Plaintiff seeks "general," "special," and "exemplary"

compensatory, consequential, and punitive monetary damages. Plaintiff also seeks an order requiring Defendants to "return Plaintiff's personal property and award compensat[ion] for the deprivation of such property," and an order requiring Defendants "to seal and destroy all documents and records relating or referring to plaintiff's arrests and any other reference to plaintiff in police files based on her arrests on February 6, 2003 and March 4, 2003.

A section 1983 plaintiff may be awarded monetary damages from an individual defendant in an amount necessary to compensate them for injuries caused by the deprivation of their constitutional rights.  See Phillips v. Hust, 477 F.3d 1070, 1080 (9th Cir. 2007).  Compensatory damages may not be awarded "absent proof of actual injury."  Id.  Plaintiff is not entitled to an award of monetary damages simply based on "the abstract value of a constitutional right." Id., quoting Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307, 106 S. Ct. 2537, 2543 (1986).  However, a section 1983 plaintiff may properly be awarded nominal monetary damages for violation of their constitutional rights.  See, e.g., Dang v. Cross, 422 F.3d 800, 805 (9th Cir. 2005); Gonzalez v. Spencer, 336 F.3d 832, 835 (9th Cir. 2003).

Punitive damages are not available from a municipality found liable to a plaintiff pursuant to section 1983.  See, e.g., City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 266-68, 101 S. Ct. 2748, 2759-60 (1981).  Because a suit against Defendant Hayman in his official capacities is essentially a suit against Maricopa County itself, Defendant Hayman, as sued

-54-

in his official capacity, is immune from an award of punitive damages.   See Mitchell v. Dupnik, 75 F.3d 517, 527 (9th Cir. 1996); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).

To be entitled to punitive damages against Defendant Hayman in his individual capacity, Plaintiff must establish Defendant Hayman acted with an evil motive or intent, or that his conduct involved reckless or callous indifference to Plaintiff's constitutional rights.   See Smith v. Wade, 461 U.S. 30, 35-36, 103 S. Ct. 1625, 1628-29 (1983).

The Court concludes there is a genuine issue of material fact in dispute with regard to whether Defendant Hayman acted with reckless or callous indifference to Plaintiff's constitutional rights.   Neither Plaintiff nor Defendant Hayman are entitled to summary judgment with regard to Plaintiff's claim for punitive damages from Defendant Hayman in his individual capacity.

Plaintiff's claims for nominal, compensatory, and punitive damages against Defendant Hayman, are issues for trial.

**Equitable relief**

The Court may grant equitable relief in a section 1983 case which is crafted to comport with the contours of the violated constitutional right.   See Richey v. Smith, 515 F.2d 1239, 1244 n.11 (5th Cir. 1975); Armstrong v. Davis, 275 F.3d 849, 870 (9th Cir. 2001) (reaching this conclusion in the context of a prisoner civil rights case); United States v. Minor, 228 F.3d 352, 356-57 (4th Cir. 2000) (reaching this conclusion in the context of a Bivens action).

In fashioning a remedy for liability arising pursuant to section 1983, the Court may consider the equities of the matter.  "[T]he hallmark of equity is the ability to assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis."  <u>Rosario-Torres v. Hernandez-Colon</u>, 889 F.2d 314, 321 (1st Cir. 1989).  "The substantive scope of relief available is a matter of the equitable powers of the federal courts.  Accordingly, courts have exercised broad remedial power in civil rights actions."  <u>Knecht v. Gillman</u>, 488 F.2d 1136, 1140 (8th Cir. 1973).  "The well-settled principle that the nature and scope of the remedy are to be determined by the violation means that federal-court decrees must directly address and relate to the constitutional violation itself."  <u>Gilmore v. People of the State of Calif.</u>, 220 F.3d 987, 1005 (9th Cir. 2000).  "Once a court of equity has asserted jurisdiction over a motion to return property, it maintains its jurisdiction as long as necessary to provide an adequate remedy to the movant."  <u>United States v. Martinson</u>, 809 F.2d 1364, 1368 (9th Cir. 1987).

### V Conclusion

Defendants Maricopa County and Maricopa County Sheriff's Office are entitled to judgment as a matter of law with regard to Plaintiff's claims that these entities are liable to her for violations of her constitutional rights based on these entities' failure to adequately train and supervise their employees.  Additionally, Defendant Arpaio is entitled to judgment as a matter of law because Plaintiff has presented no evidence that Defendant Arpaio, as Defendant Hayman's

1  supervisor, was deliberately indifferent to her constitutional
2  rights.

3          Defendant Hayman is entitled to judgment as a matter of
4  law with regard to Plaintiff's claims, except Plaintiff's claim
5  that she was seized in violation of her Fourth Amendment rights
6  and Plaintiff's claim that execution of the search warrant
7  violated her Fourth Amendment rights because the search warrant
8  was overbroad.   Defendant Hayman is not entitled to qualified
9  immunity regarding these two violations of Plaintiff's
10 constitutional rights because Plaintiff's right to be free of a
11 search executed pursuant to an overbroad search warrant was
12 clearly established prior to 2003.   Additionally, Plaintiff's
13 right to be free of an unreasonable seizure was clearly
14 established prior to 2003.

15         Accordingly,

16         Defendants' objections to Plaintiff's statement of
17 facts [Docket No. 44] is **DENIED**.

18         Defendants' motion [Docket No. 45] to file a
19 supplemental statement of facts in support of their motion for
20 summary judgment is **GRANTED**.

21         **IT IS ORDERED THAT** Defendant's motion for summary
22 judgment, Docket No. 31, is **GRANTED** with regard to Defendant
23 Maricopa County, Defendant Maricopa County Sheriff's Office and
24 Defendant Arpaio's claims that they are entitled to judgment as
25 a matter of law with regard Plaintiff's claims against them
26 based on municipal liability and supervisory liability because
27 Plaintiff has not established either municipal or supervisory
28 liability for the acts of Defendant Hayman.

**IT IS FURTHER ORDERED THAT** Plaintiff's motion for summary judgment, Docket No. 39, is **DENIED, except** with regard to Plaintiff's claim that Defendant Hayman violated her right to be free of an unreasonable search and with regard to Plaintiff's claim that Defendant Hayman subjected her to an unreasonable seizure.

**ADDITIONALLY,** as Defendants admit Plaintiff's property seized on February 6, 2003, is still in the possession of the Maricopa County Sheriff's Office (see also Ariz. Rev. Stat. §13-3920),

**IT IS ORDERED** that within thirty (30) days of the date of this order the following shall be accomplished:

1. Defendant Hayman personally and Defendant Hayman's immediate supervisor (or another supervisor chosen by Defendant Maricopa Sheriff's Office) shall meet with Plaintiff and determine what property belonging to Plaintiff was seized by the Sheriff's Department on February 6, 2003.

2. Defendant Hayman and Defendant Maricopa County Sheriff's Office shall return said property to Plaintiff.

3. Defendant Hayman and Defendant Maricopa County Sheriff's Office shall file with the Court a detailed listing of all property belonging to Plaintiff which was seized on February 6, 2007, what property of Plaintiff has been returned to her, and when it was returned.

4. If Defendants contend that certain of Plaintiff's property was properly seized under portions of the warrant which the Court has not found invalid, Defendants may note that in their filing and temporarily retain said property pending

-58-

1  further order of the court.

2       **IT IS FURTHER ORDERED** that if Plaintiff disagrees with

3  Defendants regarding what property of hers was seized, which

4  property has been returned, when the property was returned, and

5  whether Defendants may continue to retain some of her property,

6  she may filing notice of such with the Court within ten (10)

7  days of Defendants' filing.

8       The Court declines to grant Plaintiff further requests

9  for equitable relief.

10      DATED this 11th day of June, 2007.

11

12  _____

13  Mark E. Aspey
    United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28